**\*Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

|                                              |   |                        |
|----------------------------------------------|---|------------------------|
|                                              | : |                        |
| TRAVELERS CASUALTY AND SURETY                | : |                        |
| COMPANY, <u>et al.</u>,                      | : | Civil Action No.       |
|                                              | : | 07-2785 (FLW)          |
|                                              | : |                        |
|                          Appellants,         | : |                        |
|                                              | : |                        |
|              v.                              | : |                        |
|                                              | : | **OPINION**            |
| FUTURE CLAIMANTS REPRESENTATIVE,             | : |                        |
|                                              | : |                        |
|                                              | : |                        |
|                    Appellee.                 | : |                        |
|                                              | : |                        |

---

**<u>WOLFSON, District Judge</u>:**

     This bankruptcy appeal arises from the final order of the Bankruptcy Court denying the approval of a proposed settlement agreement between Travelers Casualty and Surety Company, f.k.a. Aetna Casualty and Surety Company ("Travelers"); St. Paul Fire and Marine Insurance Company ("St. Paul"); Congoleum Corporation ("Congoleum"), as the Debtors and Debtors-in-Possession in Chapter 11 bankruptcy proceedings; and Congoleum's parent company, American Biltrite, Inc. ("ABI")(collectively, "Appellants"). Appellee Future Claimants Representative, Scott Williams ("FCR"), opposes the settlement on the grounds that it is unreasonable and inadequate to provide sufficient insurance funds for the future asbestos claimants. The main issue in this appeal is whether the Bankruptcy Court abused its discretion in applying the <u>Martin</u> test, set forth by the Third Circuit, when it disapproved the settlement.

For the reasons set forth herein, I will remand the matter to the Bankruptcy Court for further consideration.

## BACKGROUND

Congoleum is a manufacturer of flooring products. It has incurred substantial liabilities arising out of tort claims premised on the sales of asbestos-containing products sold in the United States. As of December 31, 2000, over approximately twenty years, about 12,000 individuals had filed asbestos-related injury claims. Two-and-a-half years later, the number of claimants had grown to approximately 91,000. See Proposed Disclosure Statement with Respect to Tenth Modified Plan of Reorganization at 18-20. Between 2001 and 2002, Congoleum's primary insurers alleged that they had exhausted their limits of liability through the payout of certain claims and would cease to defend or indemnify Congoleum in relation to the remaining underlying claims. Congoleum then attempted to transition the remaining claims from its primary insurance coverage to its excess or "umbrella" insurance coverage. Among the higher level of excess coverage are the seventeen policies issued by Travelers and one policy issued by St. Paul (collectively, the "Subject Policies"), each of which sits at or above the third excess layer above Congoleum's primary insurance coverage.

On September 12, 2001, two of Congoleum's excess insurers, including Travelers and St. Paul, initiated an action in New Jersey

2

state court seeking a declaration of their rights and obligations to Congoleum for the underlying asbestos claims (the "Coverage Action). See Congoleum Corp. v. Ace Am. Ins. Co., No. MID-L-8090-01, slip op. at 2 (Law. Div. May 18, 2007).  In 2002, allegedly without notice to the insurance companies, Congoleum began to negotiate with the attorneys for the majority of the asbestos claimants for a global resolution of its liabilities.  Congoleum intended to effectuate this global settlement by filing a prepackaged bankruptcy.  This proposed global settlement agreement provided for payment of asbestos claims largely out of Congoleum's insurance proceeds, as well as such other proceeds as might be contributed to a trust as part of a plan of reorganization if Congoleum should file for bankruptcy ("Claimant Agreement").  Because of the alleged lack of notice, cooperation and exhaustion, the excess insurers, including Travelers and St. Paul, challenged the agreement and refused to pay claims under the agreement.

In late August 2005, Travelers, St. Paul, Congoleum and ABI reached a settlement-in-principle of their disputes.  The Coverage Action, however, continued.  Thereafter, the parties executed a series of "stand-down" agreements that prohibited Travelers' and St. Paul's counsel from actively participating in the Coverage Action but preserved their rights to resume activity if the settlement could not be finalized.  Over the following months, the parties negotiated and ultimately executed a settlement agreement

on April 26, 2006.  Consequently, the state court entered a consent order dismissing Travelers and St. Paul from the Coverage Action. The non-settling insurers continued to litigate in the Coverage Action.   On May 18, 2007, the state court issued a decision regarding phase I of the trial and held that Congoleum's excess insurers have no coverage obligation for the settlements of claims provided under the Claimant Agreement.  Congoleum does not intend to appeal the decision.

On December 31, 2003, while the first phase of the Coverage Action was pending, Congoleum filed a Chapter 11 petition in the Bankruptcy Court.  The petition included a prepackaged plan of reorganization designed to channel existing and future asbestos claims to a trust.  The plan incorporated the Claimant Agreement entered into in the Coverage Action and proposed to fund the plan primarily with Congoleum's insurance proceeds.  Both Travelers and St. Paul objected to Congoleum's reorganization plan.  To date, there has not been a confirmed plan in the bankruptcy proceeding. In fact, on February 10, 2007, the Bankruptcy Court issued a judgment finding that Congoleum's Tenth Modified Plan was unconfirmable as a matter of law.  Congoleum also appealed that decision which is pending in a separate court.

On April 25, 2006, Appellants entered into a settlement agreement in the bankruptcy proceeding (the "Travelers' Agreement").  The Travelers' Agreement proposes to resolve the

4

parties' disputes regarding, among others: (1) the parties' respective rights and obligations regarding insurance coverage under the subject polices; and (2) all other potentially contested matters among the parties in the Chapter 11 bankruptcy proceeding. Pursuant to the agreement, Travelers and St. Paul have agreed to, inter alia, pay $25 million in exchange for, inter alia, (1) a channeling injunction under 11 U.S.C. § 524(g) for asbestos claims that may be asserted directly or indirectly against both of the insurance entities; (2) an injunction to implement the sale under Section 363 of Congoleum's rights and interests in the subject policies to the insurance entities, free and clear of all claims, liens, encumbrances and interests; and (3) an injunction under Section 105(a) for non-asbestos claims that may be asserted against the entities. The Travelers' Agreement also provides that in the event the settlement is not approved, both insurance entities have the right to file an entirely new coverage proceeding against Congoleum.[1]

On May 3, 2006, Congoleum moved the Bankruptcy Court for an order authorizing and approving the Travelers' Agreement. After a

---

[1] During the course of the bankruptcy proceeding, Congoleum entered into various settlements with insurers, which were submitted to the Bankruptcy Court and approved. Some of these insurers are AIG, Century Entities, Federal Insurance Company, Mt. McKinley Insurance Company, Everest Reinsurance Company, Harper Insurance Limited, and Fireman's Fund Insurance Company.

5

lengthy discovery process, the FCR[2] formally objected to the motion claiming that the agreement was negotiated or executed in bad faith, and it was unreasonable and unjustified because it gave Travelers and St. Paul a steep discount off of the face value of their policy limits.[3]   A hearing was held on April 12, 2007, whereby the Bankruptcy Court listened to the arguments of counsel and sought the objections or concurrence from other creditor parties in the bankruptcy proceeding, including the Asbestos Claimants Committee ("ACC") and the Official Bondholders Committee (the "Bondholders").

Subsequently, the Bankruptcy Court issued its May 11, 2007 Decision, finding that it was unable to determine, at the time of issuing the decision, whether the Travelers' Agreement was fair and reasonable pursuant to the Third Circuit's test established in Martin.   Indeed, the Bankruptcy Court found that there were just "too many unanswered questions at this juncture to permit the Court to find that this settlement is reasonable and in paramount interest of the creditors."   See May 11, 2007 Decision at 7.   After the denial, Appellants filed the instant appeal essentially arguing that the Bankruptcy Court misapplied the Martin factors.

_____

[2] The Bankruptcy Court appointed Mr. Williams as the FCR to represent the rights and interests of unknown asbestos claimants that may seek to recover from the plan trust.

[3]The Court will discuss the predicted economic impact of the Traveler's Agreement later in this Opinion.

## DISCUSSION

### I.    Standard of Review

A bankruptcy court has the authority to "approve a compromise or settlement" pursuant to Fed. R. Bankr. P. 9019(a).  Settlements are favored, but the unique nature of the bankruptcy process means that judges must carefully examine settlements before approving them.  In re Martin, 91 F.3d 389, 393 (3d Cir. 1996); see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968).  A bankruptcy's court's rejection of a debtor's proposed settlement is reviewed for abuse of discretion.  In re Martin, 91 F.3d at 391; In re Montgomery Ward Holding Corp., 242 B.R. 147, 152-53 (D. Del. 1999)("Specifically, with respect to Section 363(b) motions . . . the bankruptcy court has considerable discretion").  The abuse of discretion standard is "at root a deferential standard of review."  In re Nutraquest, Inc., 434 F.3d 639, 645 (3d Cir. 2006).  An appellate court should not "disturb an exercise of discretion unless there is a definite and firm conviction that the court . . . committed clear error of judgment in the conclusion it reached upon weighing the relevant factors.  Put another way, for [an appellate court] to find an abuse of discretion [the lower court's] decision must rest on a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact."  In re Nutraquest, 434 F.3d at 645 (citations omitted)(emphasis added).  Ultimately,

settlements must be "fair and equitable." <u>TMT Trailer Ferry</u>, 390 U.S. at 424.

The buy-back of insurance policies in this case is both a sale of a debtor's asset outside the normal course of business and a compromise.  Thus, both parties do not dispute that the proposed settlement must therefore meet both the "sound business standard" test applied to sales under 11 U.S.C. § 363(b)[4] and the "fair and equitable" test governing compromises.  <u>In re Lahijani</u>, 325 B.R. 282, 284 (9th BAP 2005)("when a cause of action is being sold to a present or potential defendant over the objection of creditors, a bankruptcy court must, in addition to treating it as a sale, independently evaluate the transaction as a settlement under the prevailing 'fair and equitable' test . . .").  In addition, a proposed sale must be made in "good faith."  <u>In re Industrial Valley Refrig. and Air Cond. Supplies, Inc.</u>, 77 B.R. 15, 21 (Bankr. E.D. Pa. 1987); <u>In re Abbotts Dairies of Pennsylvania, Inc.</u>, 788 F.2d 143, 147 (3d Cir. 1986).

In order to determine whether a sale is supported by a "sound business purpose", courts should consider "all salient factors pertaining to the proceeding and, accordingly, act to further the interests of the debtor, creditor and equity holder alike." <u>In re Montgomery Ward</u>, 242 B.R. at 153-54, n.1 (quoting and adopting <u>In</u>

---

[4]A debtor-in-possession "after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

re Lionel, 722 F.2d 1063, 1071 (2d Cir. 1983)).  The court may look to factors such as "the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future," and importantly, "the effect of the proposed disposition on future plan of reorganization, the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property . . . ."  Id.  Additionally, the court may consider whether the sale is conducted with sound business reasons; accurate and reasonable notice; adequate price (fair and reasonable); and good faith.  In re Titusville Country Club, 128 B.R. 396 (W.D. Pa. 1991).  These factors are not dispositive, but merely guide the bankruptcy judge in assessing a § 363(b) motion in light of the particular facts and circumstances of each case.  Id. at 155.  The bankruptcy court has considerable discretion in deciding a § 363 sale.  Id. at 153.

Likewise, under the "fair and reasonable" test laid out by the Supreme Court in TMT Trailer Ferry and followed by the Third Circuit in Martin, courts are instructed to apprise themselves "of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting any judgment which might be

obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." TMT Trailer Ferry, 390 U.S. at 424.

Taking its cue from the Supreme Court in TMT Trailer Ferry, the Third Circuit, in Martin, set forth four criteria that a bankruptcy court should consider in striking a balance between the "value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." Martin, 91 F.3d at 393. Those criteria are: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors. Id. In examining a settlement agreement, the court should refrain from deciding "the numerous questions of law and fact." In re WT Grant Certificate of Occupancy, 699 F.2d 599, 608 (2d Cir. 1983). Courts should canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness. See Matter of Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000).

## II. Bankruptcy Court's Decision

In its Opinion, the Bankruptcy Court first discussed whether the Travelers Agreement satisfied the requirements under § 363(b) and (f). The Bankruptcy Court found that, pursuant to sound business purpose, the settlement was negotiated and formed in good

faith.[5]  However, in order to adequately assess the price of the
sale, i.e., the insurance polices at issue, the Bankruptcy Court
applied the <u>Martin</u> factors to evaluate the settlement agreement.
In doing so, the court first found that because the proposed
settlement is "not like a traditional settlement in that it does
not finally resolve any litigation.  It is a partial settlement
that simply takes Travelers out of the coverage litigation and
makes them a settling insurer in the bankruptcy.  The Debtors will
still have to contend with the coverage litigation in the state
court.   That makes the first and third settlement criteria
inapplicable to this analysis."  May 11, 2007 Decision at p. 5.
The Bankruptcy Court found that the second element is met because
Travelers is a solvent insurance company with the assets necessary
to pay the settlement amount.  <u>Id.</u>  With respect to the last
element - whether the settlement is in the paramount interests of
creditors - the court found that the settlement "is not actively
supported by any creditor constituency."  <u>Id.</u> at 6.  The court
further noted that because "the Debtors are not the real parties in
interest when it comes to insurance proceeds," the creditors'
position, such as the FCR, should be given considerable deference.
<u>Id.</u>  Finally, the Bankruptcy Court cautioned that a lack of plan of

---

[5]It appears in his opposition to Appellants' appeal, the FCR
revisits his allegation that the Travelers' Agreement was
negotiated in bad faith.  However, since the Bankruptcy Court
previously found that the agreement was entered into in good
faith, and that the parties are not appealing that particular
ruling, the Court will not review that determination.

reorganization makes the court's determination, with respect to whether the settlement amount is reasonable in light of the circumstances, difficult as there are "too many unanswered questions."  Id. at 6-7.  As a result, the Bankruptcy court disapproved Travelers' Agreement based upon those grounds.

### III. Appellants' Arguments on Appeal

In the context of applying the Martin factors, Appellants advance four reasons why the Bankruptcy Court may have abused its discretion in denying the Travelers' Settlement.  First, Appellants argue that the Bankruptcy Court erroneously required a plan to be filed as a prerequisite to approving the settlement, despite approving other settlements during the same bankruptcy proceeding without a plan.  Second, Appellants argue that the Bankruptcy Court improperly construed the "creditors' interests" factor of the Martin test to require that Congoleum must obtain affirmative support from all creditor constituencies.  Appellants further argue that because the Bankruptcy Court misinterpreted the litigation factors and discounted the settling parties' resolution of their claims, its decision constitutes an abuse of discretion.  Finally, Appellants dispute the standard that the Bankruptcy Court applied when evaluating sales of Congoleum's assets under 11 U.S.C. § 363. The Court will next address each of Appellants' arguments in connection with the application of the Martin factors.

**IV.  Martin Factors**

    **1.  The Probability of Success in Litigation**

In determining that this factor does not apply, the Bankruptcy Court reasoned that the Travelers' Agreement simply takes Travelers and St. Paul out of the coverage litigation in the state court and that Congoleum would have to continue to litigate in the Coverage Action.  As such, the agreement does not resolve any litigation. However, Appellants argue that the Bankruptcy Court, in approving prior settlement agreements in the same bankruptcy proceeding involving other insurance companies, has found this factor applicable.  For example, when the court approved the AIG settlement, the Bankruptcy Court reasoned that:

> The settlement with AIG easily meets the relatively low standard for approval of a settlement or compromise. The success in the coverage litigation is far from assured. The coverage litigation has already been quite extensive and protracted, and the proposed settlement brings in a substantial sum to the estate while at the same time eliminating risk and expense.

D.R. No. 17 at p. 41.

Similarly, the Bankruptcy Court approved the settlement with Mt. McKinley on October 31, 2005, based in part on its reasoning that:

> Factor 1, the probability of success in the litigation, also points in favor of this settlement. Both sides claim in their papers to be confident in the outcome of the coverage action even while acknowledging that nothing in the world of litigation is a sure thing.
>
> . . .

13

>If it was that the Debtor is unlikely to prevail in
>the coverage litigation, then that lends even stronger
>support to a finding that the first <u>Martin</u> factor is
>satisfied.

D.R. No. 42 at p. 29.

Appellants argue that because there is no reason for the
Bankruptcy Court to depart from its prior settlement approvals in
this instance with respect to this factor, the May 11, 2007
Decision is an abuse of discretion.  However, the Bankruptcy Court
is not without reason when deciding that this factor did not apply.
Here, the Bankruptcy Court was concerned with the effect of the
settlement in the Coverage Action.  It found that the benefit
conferred upon the estate would be minimal as Congoleum would
continue to expend resources in the Coverage Action, irrespective
of whether Travelers or St. Paul is out of the litigation.  In
addition, the fate of the Coverage Action was uncertain when the
May 11, 2007 Decision was rendered by the Bankruptcy Court.

Nonetheless, pursuant to <u>Martin</u>, courts are instructed to
"assess and balance the value of the claim that is being
compromised against the value to the estate of the acceptance of
the compromise proposal."  <u>Martin</u>, 91 F.3d at 393.  Since the
Coverage Action involves a collection of litigations between
Congoleum and its individual insurers, the particular inquiry here
should necessarily be whether Travelers and St. Paul would be
successful in pursuing their claims against Congoleum in the
Coverage Action, as well as all of their claims in this bankruptcy

14

proceeding.  In making that determination, the Bankruptcy Court could benefit by the state court's ruling in phase I of the Coverage Action, which has been handed down since the May 11, 2007 Decision.  Accordingly, in light of the changed circumstances in the Coverage Action, and the determination that must be made pursuant to Martin, the Bankruptcy Court should consider these facts when reviewing the first factor of the Martin test.

### 2.   The Likely Difficulties in Collection

The Bankruptcy Court found that this factor - the likely difficulty in collecting from Travelers and St. Paul - to be a non-issue as the parties do not dispute that both insurance entities are  solvent and capable of paying the settlement amount.  See May 11, 2007 Decision at p. 5.  On appeal, neither Appellants nor FCR dispute the Bankruptcy Court's decision in this respect.  Moreover, an independent review of the record does not reveal that Travelers or St. Paul is in financial trouble.  Thus, the Court finds that the Bankruptcy Court appropriately considered this factor in its analysis.

### 3.   The Complexity of the Litigation and the Expenses, Inconveniences and Delay Necessarily Attending It

For the same reasons set forth in its application of the first Martin factor, the Bankruptcy Court held that this particular factor was also inapplicable to the approval of the Travelers' Agreement.  Again, while the Court recognizes the Bankruptcy Court's consideration with respect to the benefits conferred upon

the bankruptcy estate, I find that an independent assessment of this factor should be undertaken.  This is particularly so in light of the Bankruptcy Court's observations when approving Congoleum's settlement with the Century Entities:  "What is clear, however, is that the parties after many years of litigation, at great expense to both sides, are still not on the verge of having a resolution . . . When success is anyone's guess, then it usually weighs in favor of settlement."  D.R. No. 78 at p. 66.  Furthermore, the Bankruptcy Court directly commented on the complexity of litigation of the Coverage Action by finding that "[t]he coverage litigation has already been quite extensive and protracted, and the proposed settlement [with AIG] brings in a substantial sum to the estate while at the same time eliminating significant risk and expense."  D.R. No. 17 at p. 41.  Similarly, when approving the Mt. Mckinely settlement, the Bankruptcy Court also found that "[i]t's beyond cavil that Factor 3, the complexity and expense of the litigation, has been established with regard to the coverage action."  D.R. No 42 at p.28.

Moreover, the state court has entered its decision during Phase I of the trial in the Coverage Action regarding the validity of the Claimant Agreement.  This decision may have an adverse impact on Congoleum and the claimants who settled with Congoleum under the Claimant Agreement.  Thus, Congoleum's pursuit of insurance coverage on behalf of the asbestos claimants who settled

16

with it under the Claimant Agreement and other pre-petition settlements may have grown more complex and difficult.  These considerations should be weighed when reaching the merits of this factor.

Accordingly, because the Bankruptcy Court did not make any specific findings regarding the complexity of the litigation in its May 11, 2007 Decision, the Bankruptcy Court is directed to apply this factor when weighing the <u>Martin</u> factors.[6]

### 4.   The Paramount Interests of Creditors

When applying the final factor of the <u>Martin</u> test, the Bankruptcy Court declined to decide whether the Travelers' Agreement falls below the lowest point in the range of reasonableness.  In doing so, the court found that a lack of reorganization plan is an obstacle in assessing the volume and type of claims that will be paid to the future asbestos claimants. Coupled with the fact that two creditor committees, the ACC and the Bondholders, did not fully endorse the settlement, the Bankruptcy Court denied the approval of the Travelers' Agreement.

Appellants contend that the Bankruptcy Court erroneously imposed a prerequisite of a plan for the approval of a settlement under Bankruptcy Rule 9019 and a sale of assets under Section 363.

---

[6]It is important to note that this Court does not comment upon how this factor should ultimately be decided.  It is the direction of this Court that the Bankruptcy Court should weigh this particular factor when this matter is remanded.

The Court disagrees with Appellants' characterization of the Bankruptcy Court's reasoning. Rather, the existence of a viable proposed plan may be relevant to the consideration of whether the Travelers Agreement is reasonable, fair and adequate under certain circumstances. Pursuant to the Travelers' Agreement, Congoleum agreed to accept a payment of $25 million from Travelers over the course of 13 months, in exchange for Congoleum selling back its insurance policies to Travelers and St. Paul, which Congoleum valued at approximately $150 million.[7] However, Congoleum's own expert estimated that Congoleum would face between 337,000 and 476,000 future asbestos claims, which claims would total between $1 billion and $1.4 billion. D.R. No 138 at Ex. 7. Thus, by Congoleum's own estimates, it faces between $2 billion and $2.4 billion in total asbestos liabilities - $977 million in present claims ($465 million in settled present claims plus $512 in non-settled present claims) including potential future claims worth over $1 billion. Comparing these estimates with the settlement amount, the Bankruptcy Court was concerned with the steep discount. In fact, during the hearing on April 12, 2007, the ACC's counsel voiced his concern regarding the settlement amount by stating that "the discount is very, very cheap." See April 12, 2007 Hearing Transcript (the "Transcript") at p. 29. That sentiment was echoed

---

[7] Also in exchange for the $25 million, Congoleum agreed to release all other coverage claims they may have under their policies with Travelers. See Travelers Agreement.

by counsel for the Bondholders.[8]

This Court also recognizes that the Subject Policies are tied to the amounts which the estate or the resulting asbestos trust will pay out in the future to resolve claims covered by the policies.  The greater the number of the claims is determined to be, the greater the present value of the coverage provided in the Subject Policies.  Accordingly, a proposed reorganization plan may have a direct bearing on the size of those payments because the Trust Distribution Procedures may have an effect on the number of covered claims and the size of the covered payments.  As such, the Bankruptcy Court deemed the existence of a plan as relevant to its assessment of the value of the settlement.[9]

Nonetheless, it is difficult on appeal to review the

---

[8]Appellants argue that because the two creditor committees did not expressly voice their objections, their silence cannot be construed as their opposition.  While the Bankruptcy Court took into consideration the statements from counsel representing the two creditors' committees, its consideration was merely in connection with other factors pertinent to reaching the merits of this Martin factor.  In other words, it was within the Bankruptcy Court's discretion to consider their position.  Moreover, the Bankruptcy Court has found, and I agree, that Congoleum has no direct pecuniary interest in the amount of the insurance settlements because the true beneficiaries of the insurance are the asbestos claimants, including the future claimants.

[9]On February 5, 2008, Congoleum, the Bondholders, the ACC, and the FCR filed a Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code and a Disclosure Statement.  The Bankruptcy Court has entered an order approving the Disclosure statement and setting a briefing schedule with respect to confirmation of the joint plan.  Should the joint plan be confirmed, the Bankruptcy Court may benefit from it when deciding this matter on remand.

Bankruptcy Court's decision when it did not make specific findings as to whether the record before it supported the reasonableness of the agreement.  In fact, by denying the approval, the Bankruptcy Court deemed the record as insufficient in making a finding of fair and adequate price of the settlement.  However, pursuant to the Martin test, the Bankruptcy Court's role is to reach an objective and independent opinion as to the reasonableness of the compromise. It has the duty to make findings of fact on all four Martin factors.  See In re RFE Industries, Inc., 283 F.3d 159, 165 (3d Cir. 2002)(Third Circuit remanded the matter to lower court because the bankruptcy court did not make any findings of fact on the four Martin factors).  While the existence of a plan is beneficial, the voluminous record in this matter - which includes, inter alia, expert reports, amount and nature of the coverage and financial analyses - should assist the Bankruptcy Court in apprising itself of the information necessary when making actual findings of fact as to whether the settlement falls below the lowest point of reasonableness.  I will defer to the Bankruptcy Court's judgment in that respect.

    Based on the foregoing, the May 11, 2007 Decision of the Bankruptcy Court is vacated, and the case will be remanded to the Bankruptcy Court for further proceedings consistent with this Opinion.

Dated: March 25, 2008

                                                   /s/ Freda L. Wolfson
                                                   Freda L. Wolfson, U.S.D.J.